**Randall E. PEDIGO, M.D.,**
**Plaintiff–Appellant,**

v.

**UNUM LIFE INSURANCE COMPANY**
**OF AMERICA, Defendant–**
**Appellee.**

No. 97–5493.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1998.

Decided May 28, 1998.

J.D. Lee (argued and briefed), Lee, Lee & Lee, Knoxville, TN, for Plaintiff–Appellant.

W. Kyle Carpenter (argued and briefed), Tony R. Dalton (briefed), Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Defendant–Appellee.

Before: RYAN, DAUGHTREY, and LAY*, Circuit Judges.

## OPINION

DAUGHTREY, Circuit Judge.

At the conclusion of a bench trial, the district court, sitting in diversity, ruled that injuries suffered by the plaintiff, Dr. Randall Pedigo, were not accidental and, therefore, were not compensable under Pedigo's disability insurance policies. On appeal, Pedigo contests that finding, as well as the district court's ruling that Pedigo himself could not offer expert testimony concerning certain aspects of the injuries inflicted upon him. We find no reversible error and affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

Randall Pedigo was a physician in the Knoxville, Tennessee, area and had served for many years as the county medical examiner. Additionally, he was a recognized firearms expert and gun collector who had previously offered courses to the Knoxville Police Department on firearms' topics. By June 21,

---

* The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1994, however, word had filtered to law enforcement officials that Pedigo had drugged and molested a teenage boy at the doctor's condominium.[1] On June 22, therefore, officers of the Knoxville Police Department and the Tennessee Bureau of Investigation arrived at the condominium to ask Pedigo to accompany them to police headquarters for questioning. Originally, the officers were willing to allow Pedigo to follow them in his own Ford Bronco but, after discovering a loaded shotgun in that vehicle, insisted that the physician would be required to accompany them to the station. Pedigo then became visibly nervous and, after ascertaining that the police had neither an arrest warrant nor a search warrant with them at that time, stated that he intended to change out of his hospital scrubs into other clothing before departing.

The doctor did allow Agent Steve Richardson and other law enforcement personnel to ·stay with him as he readied himself. After dressing, Pedigo grabbed a pair of shoes and, after bypassing other chairs, attempted to sit down on a couch to tie his shoes. Before he could do so, however, a Knoxville police officer spotted a snub-nosed revolver sticking out from under a pillow on the couch and removed the weapon from Pedigo's reach. The plaintiff then began to stall his departure, insisting that he be allowed to check the locks on the back door and the power switches on the coffee pot.

As the officers finally exited from the condominium and Pedigo feigned to be locking the front door behind himself and them, the plaintiff darted back into his residence and slammed the front door on the police. Richardson yelled for Pedigo to stop and hit the door twice to open it, fearing that Pedigo would attempt to destroy evidence at the alleged crime scene.

According to Richardson's later testimony at trial, when he re-entered the residence and proceeded to the lower level of the dwelling, he saw Pedigo reach into a chair cushion. He yelled at the plaintiff to stop and to raise his hands above chair level. Instead, Pedigo pulled a gun from the chair, faced the agent, and extended his arms with both hands on the weapon in a police grip. At that time, fearing for his own safety, Richardson began firing his own gun and struck Pedigo seven times with gunshots before the plaintiff dropped his weapon. The parties stipulated at trial that, as a result of the shooting, Pedigo is now unable to practice surgery, that he has lost much of the use of his right hand, and that he has had his right eye removed.

The plaintiff offered a radically different account of the shooting. Although he did corroborate some of Richardson's testimony concerning the events of June 22, 1994, he maintained that when the agent re-entered the condominium, he (Pedigo) was contemplating suicide and had a gun raised to his temple and his back turned to the law enforcement official. He denied hearing Richardson yell instructions to him and claimed instead that he immediately felt what seemed to be a hard shove on his right shoulder before losing consciousness and collapsing into a pool of blood.

In an effort to corroborate his account of the shooting, Pedigo also attempted to testify at trial concerning his theories involving the entry and exit wounds he suffered. The district court rebuffed that attempt, however, ruling that such testimony by the plaintiff was in the nature of expert testimony and the plaintiff had not given the requisite notice to the defense that he would be providing such opinion evidence.

Additional testimony was offered by Dr. Clellum Blake, a forensic pathologist who was accepted by the district court as an expert witness. Blake emphatically rejected Pedigo's account of the shooting, testifying unequivocally that the wounds received by the plaintiff and the damage done to Pedigo's weapon during the shooting indicated that the doctor's arms and hands had to have been extended straight out from the front of his body at the time the shots were fired by Agent Richardson. Furthermore, Blake surmised that, "without question," Pedigo had

---

1. Pedigo eventually pleaded guilty to multiple counts of illegal dispensing of a controlled substance and sexual battery in connection with the criminal investigation. As a result of the convictions, the plaintiff's license to practice medicine in Tennessee was also revoked.

two hands on the gun during the initial stages of the confrontation. Blake had no doubt that the plaintiff was pointing his gun at Richardson when Richardson shot him and that the wounds to the plaintiff's hands and arms occurred first, the injuries to the torso and back were suffered next as Pedigo turned and spiraled from the initial injuries, and the head wounds were inflicted last as the doctor was falling to the floor.

In his "Findings of Fact and Conclusions of Law," the district judge credited the testimony of Agent Richardson and, in the face of the forensic evidence, discounted Pedigo's version of events. The court further concluded that, under Tennessee law, the evidence presented did not establish that Pedigo was totally disabled as a result of an "accident" that would justify payment of benefits to the plaintiff under his disability insurance policies.

## DISCUSSION

### Exclusion of Expert Testimony

In his first issue on appeal, Pedigo insists that the district court erred in concluding that he could not offer his opinion regarding entry and exit wounds resulting from the shooting. Specifically, he contends that he was an actor in or a viewer of the events causing his injuries and, consequently, that he was relieved of the duty of disclosure otherwise required by the provisions of Fed. R.Civ.P. 26.

■ We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 492 (6th Cir.1995). The same standard is employed when reviewing rulings concerning the admissibility of expert testimony. *General Electric Co. v. Joiner*, —— U.S. ——, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997).

■ In ruling that Pedigo could not offer his own opinion regarding the entry and exit wounds he suffered as a result of being shot by Agent Richardson, the district court relied upon the fact that the plaintiff failed to disclose to the defense that Pedigo would be so testifying. In pertinent part, Fed. R.Civ.P. 26(a)(2)(A) does provide that "a par-

ty *shall* disclose to other parties the identity of *any* person who may be used at trial to present [expert] evidence...." (Emphasis added.) No exceptions to the disclosure requirement are mentioned in the rule.

Without question, Pedigo did not inform the defendants that he would be offering opinion testimony. He contends, however, that Advisory Committee Notes to prior versions of the *discovery* provisions of Rule 26 exempt him from the *disclosure* requirements. The notes accompanying 1970 amendments to the rule state, in relevant part, that Rule 26(b)(4) treats differently "those experts whom the party expects to call as trial witnesses and ... those experts who have been retained or specially employed by the party but who are not expected to be witnesses." The committee notes further explain:

It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Despite Pedigo's efforts to remove himself from the disclosure provisions of Rule 26, his arguments based upon any "actor/viewer exception" are without merit. Although the plaintiff unquestionably was present during the "transactions or occurrences that are part of the subject matter of the lawsuit," Pedigo's proposed testimony did not involve information gained as a result of his presence at the scene of the shooting. Instead, Pedigo sought to testify as a forensic pathologist solely from pictures taken of his injuries and from hospital charts. In fact, the plaintiff claims that he was unconscious after the first gunshot hit him. Consequently, his presence in the condominium did nothing to enhance his knowledge of bullet entrances and exits and did not provide him with an evidentiary advantage over any other witness. In such a situation, an actor/viewer exception would not apply because the witness would not be testifying from first-hand knowledge but, like

other experts, only from information observed, gathered, and preserved by others.

█ In any event, Fed.R.Evid. 103(a)(2) clearly states that a finding of error in a trial may not be predicated upon a ruling excluding evidence unless a substantial right·of a party is affected *and* "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." *See also Snyder,* 57 F.3d at 492. Pedigo, despite the ruling by the district court in this matter, did not make an offer of the proof he would have advanced until September 18, 1996, two-and-one-half months after the July 2, 1996, trial. Given the plaintiff's lack of diligence in complying with the requirements of Rule 103, the district court denied the request to submit an offer of proof. There was no error in such a ruling. Thus, under these circumstances, the district court did not abuse its discretion in holding Pedigo to the universal disclosure requirements for witnesses offering expert testimony at trial and in excluding from evidence any information that the plaintiff sought to introduce in violation of those mandates.

### Finding of Lack of Accident

In his remaining allegation of error, Pedigo insists that the district court's ultimate conclusion that the plaintiff was not entitled to disability insurance benefits was in error. In examining the merits of the plaintiff's argument on this issue, the court must first analyze the two insurance policies under which Pedigo claimed benefits.

Both policies explicitly reserve benefit payments for those policyholders who are totally disabled due to sickness or injury. Because neither party contends that Pedigo's disability resulted from "sickness," the district court appropriately focused its attention on the policies' definitions of the word "injury." Fortunately, both contracts of insurance similarly defined "injury," one referring to "accidental bodily injury," and the other to "bodily harm caused by an accident."

█ Because federal jurisdiction over this matter derives solely from the diversity provisions of 28 U.S.C. § 1332, we apply the substantive law of Tennessee, the state in which the forum is located, "in accordance with the then-controlling decision of the highest state court." *Bailey Farms, Inc. v. NOR–AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir.1994). Pursuant to Tennessee law, an injury is considered "accidental" so as to allow recovery under an accidental disability insurance policy when the injury "is the unanticipated and unexpected result of an intentional, voluntary act." *Harrell v. Minnesota Mutual Life Ins. Co.,* 937 S.W.2d 809, 814 (Tenn.1996).

█ Pedigo contends that his gunshot wounds could not have been anticipated or expected because he did not believe law enforcement officials would enter his residence and begin shooting at an individual who was either contemplating or attempting suicide. As noted by the district court in its decision in this case, however, the plaintiff's version of the occurrences of June 22, 1994, has not been credited by the finder of fact. Accepting the facts as found by the district court, we must thus determine only whether a reasonable person would have been surprised that Agent Richardson fired at an individual pointing a gun at him in the situation presented here. As stated by the district judge in his conclusions of law, Pedigo "aimed a pistol at an armed law enforcement officer, and so voluntarily and intentionally reduced the possible outcomes of the confrontation to two: shooting the officer or being shot. Dr. Pedigo's injuries therefore cannot be said to have resulted from an accident in any sensible meaning of the word." Because the injuries suffered by the plaintiff were not accidental, the defendants properly denied coverage to Pedigo under his disability insurance policies.

### CONCLUSION

The district court did not abuse its discretion in refusing Pedigo's request to offer expert testimony concerning entrance and exit wounds without complying with the requirements of Fed.R.Civ.P. 26(a)(2)(A). Furthermore, crediting the evidence offered by the defense in this matter, it is clear that, under prevailing Tennessee law, the injuries suffered by the plaintiff were not accidental.

We therefore AFFIRM the judgment of the district court.