William E. CHARASH, M.D.; Margaret Griffen, M.D.; and Tracy Cross, M.D., Appellants,

v.

Debra JOHNSON, Administratrix of the Estate of Wallace Benjamin Johnson; and Debra Johnson, Guardian for Beverlee M. Johnson and Shaun A. Johnson, Appellees.

Debra Johnson, Administratrix of the Estate of Wallace Benjamin Johnson; and Debra Johnson, Guardian for Beverlee M. Johnson and Shaun A. Johnson, Cross-Appellants.

v.

University of Kentucky Medical Center, Cross-Appellee.

No. 1998–CA–001067–MR.

Court of Appeals of Kentucky.

April 21, 2000.

Rehearing Denied June 30, 2000.

Discretionary Review Denied May 16, 2001.

---

William J. Gallion, Bruce D. Gehle, Gallion, Baker & Bray, P.S.C., Lexington, Kentucky, for Appellants/Cross–Appellee.

Joe C. Savage, Savage, Garmer & Elliott, P.S.C., Craig Dance, Greenebaum, Doll & McDonald, Lexington, Kentucky, for Appellees/Cross–Appellants.

BEFORE: BARBER, HUDDLESTON and MILLER, Judges.

## OPINION

HUDDLESTON, Judge:

Wallace Benjamin Johnson was transported by emergency medical services personnel to the University of Kentucky Medical Center's emergency room after he was injured in a motor vehicle accident. Following an initial examination and treatment, Wallace was admitted to UKMC. Dr. William Charash, the ER attending physician, Dr. Margaret Griffen, Dr. Tracy Cross and nurse Karen Owens, among others, cared for Wallace. During the early morning on the day following his admission, Wallace died.

Wallace's wife, Debra, acting as administratrix of his estate, brought a medical malpractice action against UKMC, Drs. Charash, Cross and Griffen and nurse Owens seeking damages to compensate Wallace's estate for funeral expenses, his conscious pain and suffering and the destruction of his power to earn money. In her capacity as guardian for Wallace's two minor children, Debra sought damages for the children's loss of their father's love, affection and protection. Prior to trial, Fayette Circuit Court dismissed UKMC as a party defendant on the ground that it enjoys sovereign immunity.

A jury subsequently rendered a verdict against Drs. Charash, Cross and Griffen and in favor of nurse Owens. Based on the verdict, the circuit court awarded Wallace's estate joint and several damages in the sum of $608,000.00 against Drs. Charash and Cross and joint and several damages in the sum of $327,386.00 against Drs. Charash and Griffen; and it awarded the children joint and several damages in the sum of $195,000.00 against Drs. Charash and Cross and joint and several damages in the sum of $105,000.00 against Drs. Charash and Griffen. All awards bear interest at the rate of 12 percent per annum from and after entry of judgment until paid. Drs. Charash, Griffen and Cross (hereinafter sometimes referred to as "the physicians") appeal advancing nine reasons why the judgment should be reversed. Debra cross-appeals, claiming that the court erred when it dismissed the complaint against UKMC on the ground that it enjoys sovereign immunity.

## I. SOVEREIGN IMMUNITY

■ We turn first to the cross-appeal in which Debra Johnson, in her representative capacity, argues that the circuit court erred in dismissing UKMC as a party defendant because it is entitled to invoke sovereign immunity. This issue has been settled by the Supreme Court, which held in *Withers v. University of Kentucky* [1] that UKMC enjoys sovereign immunity. Be-

---

1. Ky., 939 S.W.2d 340 (1997).

cause the *Withers* decision binds us,[2] as well as circuit courts,[3] the circuit court did not err when it dismissed Johnson's complaint seeking damages from UKMC.

## II. APPORTIONMENT INSTRUCTION

■ The physicians argue on direct appeal that despite the fact that UKMC was properly dismissed as a party to the action, the circuit court nevertheless erred when it did not instruct the jury that it could apportion fault to UKMC.[4] Kentucky's apportionment statute requires that "[i]n all tort actions ... involving fault of more than one party to the action" the jury is to be instructed to determine the percentage of fault attributable to "each claimant, defendant, third-party defendant, and person who has been released [by an agreement] from liability...."[5]

In *Kevin Tucker & Associates, Inc. v. Scott & Ritter, Inc.*,[6] we construed Kentucky Revised Statute (KRS) 411.182 and determined that "if the evidence at trial shows that [the third-party defendant] caused some portion of the [plaintiff's] damages, [the defendant] will be entitled to an apportionment instruction. [The third-party defendant] is entitled to be dismissed, however, because [it] cannot be liable to [the defendant] under any circumstances."[7]

The evidence adduced at the trial of this action did not show that UKMC was responsible for any injury to Wallace Johnson. While there was proof that UKMC was understaffed while Johnson was a patient, there was no attempt to connect the understaffing to the failure to properly treat Johnson. Thus, UKMC could only have been held liable vicariously as the result of the negligence of its only employee who was sued, nurse Owens; and she was absolved by the jury from any responsibility for Johnson's maltreatment.

**2.** Supreme Court Rule (SCR) 1.030(8)(a) ("The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court").

**3.** SCR 1.040(5) ("On all questions of law the circuit ... courts are bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court and, when there are no such precedents, those established in the opinions of the Court of Appeals").

**4.** The physicians state in their brief that they properly preserved this issue for review by referring to it in their prehearing statement, filed pursuant to Kentucky Rule of Civil Procedure (CR) 76.03(4). We pointed out in *Massie v. Persson*, Ky.App., 729 S.W.2d 448, 452 (1987), (overruled on other grounds by *Conner v. George W. Whitesides Co.*, Ky., 834 S.W.2d 652 (1992)), that CR 76.12(4)(c)(iv), which requires that each section of the argument in an appellant's brief contain a statement, with reference to the record, showing whether the issue was properly preserved for review and in what manner,

emphasizes the importance of the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court.

The physicians' reference to the prehearing statement does not demonstrate that the trial court had the opportunity to rule on this issue. We would, therefore, be justified in refusing to address this and other issues raised in the physicians' brief. However, we have elected to decide the important issues raised in this appeal. The record reflects that the physicians tendered an instruction authorizing the jury to apportion fault to UKMC and, thus, preserved the error. *See Surber v. Wallace*, Ky.App., 831 S.W.2d 918, 920 (1992).

**5.** Ky.Rev.Stat. (KRS) 411.182.

**6.** Ky.App., 842 S.W.2d 873 (1992).

**7.** *Id.* at 875.

## III. LIMITATION ON CROSS-EXAMINATION

■ The physicians believe that the circuit court abused its discretion in limiting the cross-examination of Drs. Griffen and Cross during appellees' case in chief to the scope of direct examination.[8] Kentucky Rule of Civil Procedure (CR) 43.06 provides in part that:

> A party may call an adverse party . . . and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and *may be cross-examined by the adverse party only upon the subject matter of his examination in chief.*[9]

The circuit court's ruling did not prevent the physicians from subsequently testifying about their personal and professional backgrounds. It merely restrained their counsel, pursuant to CR 43.06, from examining them regarding these matters during the presentation of appellees' case in chief. The circuit court did not abuse its discretion in initially limiting the scope of the cross-examination of the physicians.

## IV. CLOSING ARGUMENT

■ The physicians argue that appellees' counsel made improper statements during his closing argument that prejudiced them.[10] We have reviewed the closing argument and find no objection to counsel's statements. Since there was no objection, the circuit court had no opportunity to rule whether the argument was proper. In *Gray v. Commonwealth,*[11] the Supreme Court said that:

> Appellant's final argument is that the prosecutor made improper comments during his closing arguments in both the guilt and penalty phases of the trial which amounted to prosecutorial misconduct. As there were no objections made, the trial court was not given the opportunity to pass upon the merits of these allegations which are not properly preserved for review. We must therefore decline to consider this challenge.[12]

Because there was no objection, thus denying the circuit court the opportunity to rule on the propriety of the argument, we will not decide this issue.

## V. LOSS OF PARENTAL CONSORTIUM

■ In *Giuliani v. Guiler*[13] the Supreme Court "recognize[d] the claim of minor children for loss of parental consortium."[14] In the present case, Johnson's children sought and were awarded damages for loss of their father's consortium during their minority. The physicians ar-

---

**8.** The physicians state they preserved this error in their motion to submit an additional issue. While we did grant the physicians' motion to submit an additional issue, this does not relieve the physicians from complying with CR 76.12(4)(c)(iv). *See* footnote 4. As the Supreme Court did in *Nichols v. Commonwealth*, Ky., 839 S.W.2d 263, 266 (1992), we "admonish appellate counsel to comply with all the rules of this Court regarding the presentation of appellate briefs and in particular with the requirements of the rule to state whether the question has been properly preserved for appellate review." Although not referenced in the physicians' brief, the record reflects that they preserved this error by objecting during the examinations of Drs. Cross and Griffen.

**9.** Emphasis supplied.

**10.** *See* footnote 4.

**11.** Ky., 979 S.W.2d 454 (1998).

**12.** *Id.* at 457.

**13.** Ky., 951 S.W.2d 318 (1997).

**14.** *Id.* at 323.

gue that damages for loss of parental consortium end with a parent's death.[15] In *Giuliani*, the plaintiff's wife died during childbirth.[16] The plaintiff, as next friend, sued for loss of consortium for his children. The Court said in *Giuliani* that "[t]he claim of loss of parental consortium is a reciprocal of the claim of the parents for loss of a child's consortium which was recognized in KRS 411.135." [17] That statute provides that:

> In a wrongful death action in which the decedent was a minor child, the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action.

The Court in *Giuliani* also noted that "there is no legal distinction between the claim of a parent for loss of a child's consortium from the claim of a child for the loss of a parent's consortium." [18] Because the claims are legally indistinguishable and reciprocal and KRS 411.135 allows for the recovery of damages through a child's minority, the claim for loss of parental consortium does not end at a parent's death.

## VI. PAIN AND SUFFERING INSTRUCTION

■ The physicians argue that the circuit court erred by giving a pain and suffering instruction because there was an absence of proof regarding causation.[19] Both expert and lay testimony refute this argument. There was expert testimony

that had Johnson undergone surgery, he probably would have survived instead of suffering an "unnecessary death[ ] due to serious injuries that weren't recognized earlier." Debra testified that her husband suffered immensely and asked for help repeatedly. We believe this proof sufficiently established causation and, therefore, the circuit court did not err by including a pain and suffering instruction.

## VII. ECONOMIC EXPERT

■ The physicians believe the circuit court erred by admitting the testimony of the economic expert called by the plaintiff because the testimony was too speculative.[20] During the examination of the economic witness, physicians' counsel objected to the economic witness's testimony that projected Johnson's lost earnings based on employment as a school teacher as speculative. The expert offered an additional three projections based on employment as: (1) a graphic designer, (2) a self-employed graphic designer, and (3) if Johnson had maintained his current employment. The physicians did not object to these other projections, and, thus, the error is not preserved for review. Even if we liberally construe the objection that the physicians did make to find a preserved error regarding the other projections, testimony revealed that Johnson earned $15.00 per hour plus fringe benefits, and he had job security. The economic expert multiplied Johnson's annual compensation by his work-life expectancy in calculating his lost earnings. There clearly was an economic loss to Johnson's estate resulting from his

15. *See* footnote 4. The physicians preserved this error during a colloquy with the court regarding proposed jury instructions.

16. *Giuliani, supra,* n. 13, at 318.

17. *Id.* at 321.

18. *Id.*

19. *See* footnote 4. The physicians preserved this error during the colloquy with the court regarding jury instructions.

20. *See* footnote 4.

death. Therefore, the fact that damages were sustained was not speculative. The fact that the calculation of damages was necessarily imprecise is of no moment.[21]

## VIII. READING OF DEPOSITION TESTIMONY

■ The physicians argue that the circuit court erred when it allowed Debra's counsel to read the deposition testimony of the physicians' economic expert during her case in chief.[22] CR 32.01(c) provides in part that the deposition testimony of a witness may be used when the witness "is at a greater distance than 100 miles from the place where the court sits in which the action is pending or out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition[.]" The expert witness was both out of state and more than 100 miles away from Fayette County where the trial was held; and Debra did not procure his absence. Therefore, the court did not err in allowing the deposition to be read.

## IX. THE PHYSICIANS' EXPERT OPINIONS

■ CR 26.02(4) provides that a party may, through interrogatories, require another party to identify the experts it expects to call at trial. The physicians did not list themselves as experts in response to Debra's CR 26.02(4) interrogatories.[23] Consequently, the circuit court limited the defendant physicians' testimony to the facts they had learned and the opinions they had formed based on first-hand knowledge and observation. The physicians argue the court should have allowed them to give opinion testimony based on events that occurred subsequent to Johnson's death.[24]

The United States Court of Appeals for the Sixth Circuit addressed the propriety of excluding a defendant's expert testimony in *Pedigo v. UNUM Life Insurance Co. of America.*[25] Pedigo, a physician and medical examiner, sought disability insurance benefits after the police shot him following an altercation.[26] Pedigo argued

21. *See Hanson v. American Nat'l Bank & Trust Co.,* Ky., 865 S.W.2d 302, 309 (1993) (" '[I]t is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery.' ") (quoting *Kellerman v. Dedman,* Ky., 411 S.W.2d 315 (1967)).

22. *See* footnote 4. The physicians preserved this error by objecting to the reading of the deposition during trial.

23. The physicians were requested to provide the name, address and specialty of each expert whom you intend to call as a witness at the trial of this action, and as to each such expert you are specifically requested to provide the following information:
(a) A complete resume of qualifications;
(b) The subject on which the expert is expected to testify;
(c) The substance of facts and opinions to which the expert is expected to testify;

(d) A reasonable summary of the grounds supporting each opinion to which the expert is expected to testify; and
(e) All titles, authors and publication dates of those texts, articles and publications upon which the expert relies in whole or in part in the formation and support of any opinion. If you have received a written report or reports from any such expert, please so state by identifying the author and date of each such report or reports; and you are invited to attach a copy of each such report to your answers to these interrogatories and requests for production of documents.

24. *See* footnote 4. The physicians preserved this error by objecting repeatedly during trial.

25. 145 F.3d 804 (6th Cir.1998).

26. *Id.* at 805, 806.

 

his injuries were accidental.[27] The district court prevented Pedigo from offering his expert opinion regarding the bullet wounds because Pedigo did not identify himself as an expert.[28] The Sixth Circuit determined that the district court properly excluded Pedigo's expert testimony "because the witness would not be testifying from first-hand knowledge but, like other experts, only from information observed, gathered, and preserved by others."[29] Similarly, the circuit court in this case properly excluded the physicians' opinion evidence gleaned from information acquired well after Johnson died as they "would not be testifying from first-hand knowledge."[30]

According to CR 26.02(4), a party must disclose, if asked through interrogatories, the identity of "each person whom the ... party expects to call as an expert witness at trial...." The physicians are "person[s]" within the meaning of CR 26.02(4) and are thus subject to the rule's disclosure requirement when testifying about events beyond those they personally observed. Because the physicians did not list themselves as experts, the circuit court did not err in excluding portions of the physicians' expert testimony.[31]

## X. THE TREATING PHYSICIANS' EXPERT OPINIONS

The physicians argue that the circuit court erred when it excluded certain opinion testimony of two treating physicians who were not parties to this action. This Court has stated that "excluded testimony must be placed in the record by avowal to be preserved for our review."[32]

The physicians did not offer the excluded testimony by avowal. Accordingly, we do not reach the merits of this argument.

## XI.   CONCLUSION

The judgment is affirmed.

## ALL CONCUR.

---

27.   *Id.* at 808.

28.   *Id.* at 806.

29.   *Id.* at 807, 808.

30.   *Id.*

31.   Essentially the same opinion evidence was offered by other experts called by the physicians.

32.   *Transit Auth. of River City v. Vinson,* Ky. App., 703 S.W.2d 482, 487 (1985).