COMBS, JUDGE:
Janet Fraley appeals from an order of the Floyd Circuit Court denying her motion for a new trial following entry of the court's judgment in favor of the appellees, Phillip Zambos, M.D., and Eastern Kentucky Imaging, P.S.C.[1] , in her medical negligence action. For the reasons stated herein, we affirm the judgment and order on appeal.
Beginning in 1992, and upon the request of her family physician, Dr. Caruso, Fraley had screening mammograms performed at Highlands Regional Medical Center in Prestonsburg. These screening mammograms were performed at two-year intervals. In 1997, a radiologist who interpreted Fraley's screening mammogram noted in his report the appearance of a nodule in Fraley's left breast and similar nodules in her right breast. The radiologist recommended further imaging. As a result, bilateral ultrasounds were performed, and spot compression images of each breast were taken. The ultrasound revealed a cyst in Fraley's left breast. The spot compression images of the right breast were interpreted as normal.
In 2001, Fraley began to have screening mammograms every year. Zambos, a radiologist, began working with the hospital in July 2004. A second radiologist, Dr. Terry Hall, was hired in July 2011.
Fraley did not routinely perform breast self-examinations, but in 2012 she felt three lumps in her right breast. She made *444 an appointment with Dr. Caruso, who recommended that she have a diagnostic mammogram. Dr. Hall interpreted the diagnostic mammogram performed at Highlands Regional Medical Center on September 11, 2012. As a result, he recommended that Fraley go to King's Daughters Medical Center in Ashland for further imaging. In Ashland, Fraley underwent an MRI. She saw Dr. Mary Legenza, who diagnosed her with breast cancer. Ultimately, Fraley underwent a total mastectomy of her right breast and began treatment with an oncologist, Dr. Suleiman Massarweh, at the University of Kentucky Markey Cancer Center. Fraley has undergone radiation, chemotherapy, and hormone treatment. Cancer has since been detected in Fraley's spine, pelvis, and possibly her brain stem.
In July 2013, Fraley filed a medical malpractice action against Dr. Philip Zambos; Dr. Terry Hall; Eastern Kentucky Imaging P.S.C.; Highlands Hospital Corporation; and Consolidated Health Systems, Inc. Fraley sought damages for lost wages, medical costs, and pain and suffering.
In her complaint, Fraley alleged that Dr. Zambos had breached the standard of care regarding the screening mammograms that he interpreted in 2006, 2007, 2008, 2009, and 2010 by failing to identify a suspicious abnormality in her right breast. She alleged that Dr. Hall had breached the standard of care by failing to find the suspicious abnormality in her 2011 screening mammogram. Fraley eventually settled her claims against Dr. Hall and the hospital. The matter proceeded to trial against Dr. Zambos and Eastern Kentucky Imaging, P.S.C.
Following presentation of the evidence and the testimony of numerous experts, the jury rejected Fraley's claims and found in favor of Dr. Zambos. Fraley's motion for a new trial was denied, and this appeal followed.
Fraley argues that by denying her motion for a new trial, the trial court abused its discretion with respect to several evidentiary matters. She maintains that these errors were so egregious as to entitle her to a new trial and that the trial court erred by failing to grant her motion. After our review, we are compelled to disagree.
The standard of review regarding a trial court's evidentiary rulings is abuse of discretion. Goodyear Tire and Rubber Co. v. Thompson , 11 S.W.3d 575, 581 (Ky. 2000). An abuse of discretion is demonstrated by proving that the circuit court acted in a manner that was unfair, arbitrary, unreasonable, or unsupported by sound legal practice. Peters v. Wooten , 297 S.W.3d 55, 62 (Ky. App. 2009).
First, Fraley contends that the trial court erred by allowing Dr. Zambos to testify as an expert witness. In a pretrial order, the trial court limited Zambos to two experts per field. Zambos presented Dr. Michael Racenstein and Dr. Joel B. Bowers as his expert radiologists. Immediately before Zambos began his direct examination, the court conducted a bench conference to discuss Fraley's objection to Zambos's testifying as an expert and the scope of his testimony. The court noted counsel's objection and cautioned defense counsel not to ask Zambos questions that would elicit expert testimony. He reminded counsel that Zambos would be permitted to testify only as to what he did and what he observed. Fraley contends that Zambos's testimony on direct examination strayed from his factual observations to offering his expert opinion about the testimony of Dr. Linda B. Griska, Fraley's expert radiologist.
Dr. Griska testified that Fraley's screening mammograms revealed a pattern of spiculated focal asymmetric density in the *445 upper quadrant of her right breast. According to Dr. Griska, this pattern was a clear indication that Fraley should have been called back for further radiology studies. She opined that Zambos had misinterpreted Fraley's mammograms again and again from 2006 through 2010 and that his misinterpretation of the images resulted in a delay of Fraley's cancer diagnosis.
Zambos presented the jury with Fraley's original radiology records and testified about what he had observed on each of the mammograms. He also referred to the spot compression images taken in 1997 that were interpreted as normal for the right breast. Zambos's observations and interpretations of Fraley's mammograms were in stark contrast to Griska's testimony.
After Zambos had presented an extensive narrative before the jury, counsel for Fraley raised an objection. The objection was aimed at Zambos's testimony related to the spot compression images taken following Fraley's suspicious screening mammogram of 1997. Counsel was not convinced that these images had been provided to Fraley prior to trial as part of discovery. After a lengthy discussion at the bench, the court took a brief recess to review the parties' discovery. After reconvening, the court ruled that the spot compression images had been duly provided to the defense as part of Fraley's radiological records. Fraley's counsel then confirmed to the court that he had been in possession of the disputed images after all.
Before the bench conference ended, counsel raised another objection. He argued that Zambos's testimony regarding the 1997 spot compression images constituted expert testimony which had not been properly disclosed in violation of the provisions of CR 2 26.02 and which violated the court's order limiting Zambos to two radiology experts.
The provisions of CR 26.02 permit a party to require another party to state the subject matter on which an expert is expected to testify; to state the substance of the facts and opinions to which the expert is expected to testify; and to provide a summary of the grounds for each expert opinion. Fraley contends that Zambos's testimony should have been excluded since he testified as an expert but failed to comply with this rule.
At the time that Fraley's counsel interposed his objection, Zambos had already provided the disputed testimony to the jury. The court had decided at the bench conference conducted before Zambos's direct testimony began that Zambos could not testify as an expert. However, counsel for Fraley permitted Zambos's narrative to go unchallenged for more than ten minutes. Consequently, we are persuaded that the alleged error was not properly preserved for our review.
When Fraley's counsel became aware or concerned that Zambos's testimony on direct examination had begun to stray from his factual observations and had expanded to offering his expert opinion about the testimony of Dr. Griska, it was incumbent upon him to alert the trial court that Zambos had exceeded the scope of the court's earlier ruling. See MV Transp., Inc. v. Allgeier , 433 S.W.3d 324 (Ky. 2014). The issue could have been preserved for appellate review with a contemporaneous objection.
However, even if we to ignore the preservation issue and to review the alleged error, we would not conclude that the disputed testimony constituted improperly *446 offered expert testimony. Instead, this testimony merely demonstrated Zambos's own professional thought processes as he interpreted Fraley's mammograms each year from 2006 through 2010 and the reasons why he never ordered a diagnostic mammogram or other images. During his cross-examination, Zambo explained that as he was interpreting Fraley's 2004 mammogram (the first time that he had interpreted a mammogram for her), he reviewed all of her previous mammograms in order to establish a proper baseline. In his direct testimony, Zambos expressed why he concluded that Fraley's mammograms deviated from the baseline only to the extent that tissue deposits had been replaced by fat deposits as a natural consequence of aging. He explained why he had interpreted each of the mammograms as normal. The substance of this testimony was not required to be disclosed under the provisions of CR 26.02 because it was not expert testimony. It concerned facts that Zambos learned and the opinions he formed based upon his first-hand knowledge of information that he had observed, gathered, and preserved. See Charash v. Johnson , 43 S.W.3d 274 (Ky. App. 2000) ; Pedigo v. UNUM Life Ins. Co. of America , 145 F.3d 804 (6th Cir. 1998). In essence, he was merely explaining his own work product.
Next, Fraley argues that the trial court abused its discretion by failing to exclude the undisclosed expert opinions of Dr. Joel B. Bowers, Dr. Michael Racenstein, and Dr. James Connolly. We disagree.
To recapitulate, the provisions of CR 26.02 permit a party to require another party to state the subject matter on which an expert is expected to testify; to state the substance of the facts and opinions to which the expert is expected to testify; and to provide a summary of the grounds for each expert opinion.
Fraley contends that the trial testimony of Dr. Bowers should have been excluded because he offered an interpretation of Fraley's screening mammograms that he had not properly disclosed before trial. Fraley argues that Dr. Bowers's trial testimony concerning the densities visible in the mammograms of her right breasts differed from his deposition testimony and from the written synopsis of his expert disclosure provided by Zambos. More specifically, she claims that his description of the nature of the densities observed by Dr. Griska in Fraley's mammograms as "symmetrical spikes" was entirely new. With respect to Dr. Racenstein, Fraley contends that his trial testimony regarding the "translucency" of the densities observed by Dr. Griska also was not properly disclosed before trial.
We have carefully reviewed the entirety of the trial testimony and the pretrial disclosures of Dr. Racenstein and Dr. Bowers. We are not persuaded by the substance of either of Fraley's contentions. However, we must again conclude that the issues were not properly preserved for our review.
Fraley's counsel acknowledges that he failed to interpose timely objections to the testimony which he now challenges on appeal. Instead, he contends that the issues were adequately preserved through Fraley's motion to alter, amend, or vacate. We disagree. It was incumbent upon counsel to raise a contemporaneous objection when he believed that the doctors were offering testimony beyond the scope of their pretrial disclosures so that the trial court could prevent or cure any error in a timely fashion. See Polk v. Greer , 222 S.W.3d 263 (Ky. App. 2007). Fraley's delay in voicing her objection to the experts' testimony deprived the court of the opportunity *447 to avoid the error or to take curative measures at trial. Consequently, we reject Fraley's contention that the issues were properly preserved for appellate review. Despite this preservation problem, as noted above, we nonetheless reviewed the substance of these contentions and found them to be without merit.
Fraley contends that Dr. Connolly "also expressed new opinions for the first time" during his direct examination. Dr. Connolly testified that the tumor on Fraley's spine could have been present for up to ten years and that its presence in the bone signified incurable cancer. Fraley claims that that medical opinion was not disclosed and that this testimony was meant to imply to the jury that "even if [Zambos] had properly read [Fraley's] mammograms, the result would have been the same." However, Zambos's expert witness disclosure clearly announced that Dr. Connolly would testify that "Dr. Zambos'[s] interpretation of the mammography studies from 2006-2010 was not a substantial factor in causing Ms. Fraley's any [sic] harm or injury." Furthermore, the substance of Dr. Connolly's trial testimony and his deposition testimony are sufficiently similar. We have found no prejudice. We cannot agree that the trial court erred by refusing to exclude the challenged testimony.
Next, Fraley argues that the trial court erred in permitting the testimony of Chris Hoffmann, the hospital's chief operating officer. Hoffman testified that the volume of Dr. Zambos's radiological interpretations was consistent with that of his predecessor, Dr. Nolan Sakow.
At trial, Fraley demonstrated that Dr. Zambos interpreted a tremendous number of radiological images each year-averaging some 50,000. She suggested that this volume of interpretations was extreme and that, therefore, Dr. Zambos could not have paid sufficient attention to interpreting her screening mammograms each year.
Prior to trial, the circuit court ruled that Dr. Zambos could not call Dr. Sakow to testify because he had not been timely identified as a witness. On appeal, Fraley suggests that the trial court's ruling implied or signified that no other witness could offer information about the number of radiological images that Sakow had interpreted. Fraley contends that upon Hoffmann's cross-examination, Dr. Zambos's counsel unfairly "finessed" the court's ruling by eliciting information to indicate that the volume of Dr. Zambos's interpretation of radiological images was consistent with that of Dr. Sakow.
Upon Hoffmann's cross-examination, Dr. Zambos's counsel asked whether Hoffmann was generally aware of the number of radiological interpretations performed during Sakow's tenure at the hospital. Fraley's counsel objected, asserting that Hoffmann's testimony would be based upon speculation. The trial court overruled the objection and specifically indicated that Hoffmann could testify as to whether Dr. Sakow and Dr. Zambos interpreted a similar number of radiological images each year-if he knew. Hoffmann testified that the number of radiological images interpreted by Dr. Sakow and then by Dr. Zambos were consistent and that they both averaged 50,000 reads per year. Wholly aware of its own ruling excluding Dr. Sakow as a witness, the trial court permitted Hoffmann to testify about Dr. Sakow's performance on the job. Thus, we cannot agree that Dr. Zambos's counsel circumvented or "finessed" the court's ruling with respect to Dr. Sakow. We find no error.
Next, Fraley contends that the trial court erred by permitting the admission of evidence that Dr. Terry Hall (the radiologist who interpreted Fraley's 2011 screening *448 mammogram ) had settled the claim asserted against him and by instructing the jury that it could apportion fault to him. We disagree.
At trial, evidence was introduced that Dr. Hall had misinterpreted Fraley's 2011 screening mammogram. Fraley's own expert, Dr. Griska, volunteered that testimony. Fraley now contends that this evidence was inadmissible.
On cross-examination, Dr. Griska volunteered her understanding that Dr. Hall had admitted that he had made a mistake in interpreting Fraley's mammogram and that he had settled the case against him. Upon Fraley's objection, the trial court warned Zambos's counsel to avoid this line of questioning; counsel addressed no more questions to Dr. Griska on the subject.
Nevertheless, on redirect, Fraley's counsel intentionally re-visited this issue and elicited testimony from Dr. Griska about Dr. Hall; i.e. , that although he had initially denied liability, Dr. Hall had settled the action after Dr. Griska had offered her expert opinion. Furthermore, Fraley's counsel elicited testimony from Dr. Griska specifically indicating that Dr. Zambos "carries the lion's share of the responsibility for the vast delay in diagnosis of breast cancer for Miss Fraley." Over Zambos's objection, she testified that Fraley could have been saved if her mammograms had been properly interpreted. Thus, the testimony of Fraley's own expert witness "opened the door" on the issue of Dr. Hall's settlement and injected it into evidence. See ROBERT G. LAWSON , THE KENTUCKY LAW HANDBOOK § 1.10 (LexisNexis Matthew Bender 5th ed. 2013). The trial court clearly committed no error in allowing this line of testimony to remain in evidence.
Furthermore, we decline to review Fraley's contention that the trial court erred by failing to address the reference by Zambos's counsel to the settlement during his closing argument. Fraley's counsel did not object to the statement, and the alleged error is unpreserved for our review.
Next, Fraley contends that she is entitled to a new trial since the trial court included Dr. Hall in the apportionment instructions to the jury. We disagree.
Kentucky's apportionment statute requires "[i]n all tort actions ... involving fault of more than one (1) party to the action" that the jury be instructed in order to determine the percentage of fault attributable to "each claimant, defendant, third-party defendant, and person who has been released [by an agreement] from liability...." KRS 3 411.182. As summarized above, the evidence of Hall's liability was both necessary and sufficient to allow the submission of the issue of his fault to the jury. There was no error.
Finally, Fraley contends that the trial court erred by failing to allow her to fully cross-examine two radiologists who had worked for a time with Dr. Zambos and by refusing to allow her to introduce as exhibits some documentary evidence that the radiologists had produced. We disagree.
Dr. Brandon Crum and Dr. Joshua Crum were hired by the hospital to assist in radiology during Dr. Zambos's tenure. The evidence indicated that hospital physicians soon became dissatisfied with the Crums' turnaround time. Consequently, they were terminated. Each doctor signed a separation agreement.
The trial court permitted Fraley: to put into evidence much of the content of the Crums' separation agreements and affidavits;
*449 to explore fully the circumstances surrounding the drafting of the affidavits; and to reveal the reasons underlying their eventual withdrawal. Nevertheless, Fraley claims that the trial court erred in refusing to permit her to introduce into evidence the draft affidavits, the executed affidavits, and other related documents themselves.
The drafting, execution, and eventual withdrawal of the Crums' affidavits were completely collateral to the issue at trial. Neither of the doctors had any knowledge of or involvement with the interpretation of Fraley's mammogram. They offered no opinion on Dr. Zambos's compliance with or departure from the applicable standard of care. Fraley was given wide latitude to explore the circumstances surrounding the execution and withdrawal of their affidavits, and she was permitted to put the content of the affidavits into evidence by means of their trial depositions. Despite Fraley's contention, the refusal of the trial court to allow the introduction of the draft and executed affidavits, the separation agreement, and a related email did not deprive the jury of a "[complete] picture of the evolution of the Crum Brothers' (sic) testimony...." Fraley was not prejudiced by the trial court's ruling, and its refusal to permit these documents to be introduced into evidence does not constitute reversible error or an abuse of discretion. See Goodyear Tire , 11 S.W.3d 575.
We affirm the judgment and order of the Floyd Circuit Court.
ALL CONCUR.

Zambos is the only employee of Eastern Kentucky Imaging, P.S.C.