Aubrey MAYHEW, d/b/a Dream City Music, Plaintiff–Appellant,

v.

Tommy ALLSUP, d/b/a Konawa Music Publishing Company; Karen Kelly Allsup, d/b/a Konawa Music Publishing Company, Defendants–Appellees,

MCA Records, Inc., Defendant.

No. 98–5047.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1998.

Decided Jan. 27, 1999.

John Aaron Holt (argued and briefed), Jacobs & Holt, Nashville, Tennessee, for Plaintiff–Appellant.

Grant Smith (argued and briefed), Nashville, Tennessee, for Defendants–Appellees.

Before: WELLFORD, BOGGS, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which BOGGS, J., joined. WELLFORD, J. (p. 824), delivered a separate opinion concurring in the result.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Aubrey Mayhew appeals an order of the district court granting Defendants–Appellees Tommy and Karen Kelly Allsup summary judgment and dismissing Mayhew's copyright infringement action. The disposition below turned on the interpretation of the term "publication" within the Copyright Act of 1909. A recently enacted statute that is applicable to this pending appeal supersedes the interpretation adopted by the district court. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** the case for further disposition.

### I

Mayhew asserts that he owns the copyright to the song "A Big Ball in Cow Town" ("Song") and that the Allsups infringed upon the copyright.[1] Mayhew alleges that the Song was composed in the 1940s by Hoyle Nix, that a claim of copyright on the Song was made in 1968, and that, through a series of assignments, Nix's rights in the Song became vested in Mayhew. The Allsups question the validity of the copyright, arguing, inter alia, that the Song entered the public domain when Nix published the Song without complying with federal copyright requirements.[2] The Song was published within the meaning of the applicable 1909 Copyright Act, the Allsups assert, in 1949 or 1958 when Nix produced phonorecords of the Song for public sale.

The Allsups provided evidence that the Song was recorded by Nix in 1949 and 1958. The district court found that a genuine issue of material fact existed as to whether the 1949 recording was made available for public distribution. The affidavit testimony of Ben Hall, a recording studio owner, that the 1958 recording was offered for sale, placed in jukeboxes, and distributed for radio airplay, was undisputed, however. Thus, the district court properly reached the legal question of whether such distribution constitutes publication of the Song for the purposes of the 1909 Copyright Act.

The district court determined that the public distribution of a phonorecord does constitute publication and that the Song entered the public domain in 1958 when a phonorecord was distributed without a notice of copyright. Accordingly, on September 25, 1997 the district court granted summary judgment in favor of the Allsups. On October 9, 1997 Mayhew filed a motion to alter or amend the September 25 order. The district court denied that motion on November 21, 1997, and Mayhew filed a timely appeal in this court.

### II

This court reviews de novo an order of the district court granting summary judgment. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

■ This action is governed by the Copyright Act of 1909 (the "1909 Act"), which allowed a creator to "secure copyright for his work by publication thereof with the notice of copyright" affixed to each copy published. 17 U.S.C. § 10 (1909 Act). If a work was published without a valid copyright notice, however, the work irretrievably entered the public domain. The 1909 Act did not define "publication," and the courts have split on the proper definition. *See* 2 NIMMER ON COPYRIGHT § 7.02[C][1]; *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 952–53 (9th Cir.),

---

1. The case against Defendant MCA Records, Inc. was voluntarily dismissed.

2. The Allsups also argue that the Song was simply an arrangement of material already in the public domain and, thus, that the copyright obtained in 1968 by Mayhew's predecessor in interest was invalid. The district court did not reach this question.

*cert. denied*, 516 U.S. 927, 116 S.Ct. 331, 133 L.Ed.2d 231 (1995).

Relying on a Supreme Court case that had determined that a player piano roll did not constitute a copy of the musical composition, *see White–Smith Music Pub Co. v. Apollo Co.*, 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908), the Southern District of New York concluded that a phonorecord could not be a copy of a composition and, thus, that the distribution of phonorecords could not constitute publication. *See Rosette v. Rainbo Record Mfg. Corp.*, 354 F.Supp. 1183, 1189 (S.D.N.Y.1973). The Second Circuit affirmed on the opinion of the district court. *See Rosette v. Rainbo Record Mfg. Corp.*, 546 F.2d 461 (2d Cir.1976). The Ninth Circuit declined to follow *Rosette* in *La Cienega*, 53 F.3d at 953, concluding that *Rosette* reflected the minority rule and that following the *Rosette* approach would reduce the incentive of artists to register copyrights. This court has only considered this issue in an unpublished opinion in the case of *Leeds Music Corp. v. Gusto Records, Inc.*, 601 F.2d 589, 1979 U.S.App. LEXIS 13834 (6th Cir.1979). There, in affirming the district court, the panel held that the court had "properly rejected the *Rosette* case as an applicable rule of copyright law." *Id.*

In granting summary judgment to the defendants, the district court below followed *Leeds* and *La Cienega* and concluded that the public distribution of phonorecords constitutes publication of the underlying composition for the purposes of the 1909 Act. Mayhew, of course, disputes that interpretation, and he points to a statute, enacted after the district court's order granting summary judgment, that apparently resolves the definitional question in his favor. By dictating that "[t]he distribution before January 1, 1978, of a phonorecord shall not for any purpose constitute a publication of the musical work embodied therein," this statute definitively resolves the disputed interpretative question. *See* 17 U.S.C. § 303(b) (enacted November 13, 1997); *see also Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1235 (9th Cir.1998) (noting that the enactment of § 303(b) overturns the court's holding in *La Cienega* ). Therefore, if § 303(b) is applicable to this pending appeal, reversal is dictated.[3]

■ As an initial matter, the Allsups argue that Mayhew had the opportunity to bring the new statute to the attention of the district court while that court was considering Mayhew's motion to alter or amend the court's order, that Mayhew's failure to do so should be deemed a forfeiture, and that this court should not consider the applicability of the statute. This argument, based on the rule of *Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), is unpersuasive. Section 303(b) was enacted on November 13, 1997, after the district court issued its September 25 order granting summary judgment in favor of the Allsups and after Mayhew filed his October 9 motion to alter or amend the judgment. Nonetheless, the Allsups argue that Mayhew should have become aware of the new statute and should have filed a motion to supplement or amend his October 9 motion before the district court denied that motion on November 21, eight days after the enactment of § 303(b). It is not reasonable to expect a party to act within such a short interval, however, particularly in the absence of specific notice. Accordingly, we conclude that the circumstances of this case warrant an exception to the doctrine of *Pinney Dock*.

■ The rule that this court ordinarily does *not* consider issues not raised and passed on below is not jurisdictional and may be waived in exceptional cases or to avoid a miscarriage of justice. *See id.* Here, the issue allegedly forfeited is purely a matter of law, is dispositive, and, if applied, will result in reversal. Moreover, any neglect on the part of Mayhew in not raising the issue below is minimal. *See United States v. Chesney*, 86 F.3d 564, 568 (6th Cir.1996) (finding that the failure to raise a constitutional issue in the lower court presented an exceptional

---

3. We note that § 303(b) conforms copyright protection for works released on phonorecords before January 1, 1978 with the rule for works released on phonorecords after that date. In neither case does, or did, such release place the work in the public domain. *See* 17 U.S.C. § 302.

circumstance that excused the default when the challenge rested on a Supreme Court case decided after the entry of the judgment below), *cert. denied,* 520 U.S. 1282, 117 S.Ct. 2470, 138 L.Ed.2d 225 (1997). Finally, even though the Allsups have failed to brief the question, the issue is sufficiently straightforward that this omission is not dispositive. Thus, we consider whether the statute is applicable.

When Congress has unambiguously specified the temporal reach of a new statute, there is no conflict between the presumption against statutory retroactivity and the rule that a court should apply the law in effect at the time of its decision. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see also Wright v. Morris,* 111 F.3d 414, 418 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). It is clear from the language employed that § 303(b) should be applied to pending cases. First, the subsection obviously applies to pre-enactment conduct. In fact, it applies only to the distribution of records prior to January 1, 1978. Thus, applying the statute to pending cases has no impact on the conduct that is the subject of the subsection. Second, the subsection provides that the distribution of phonorecords "shall not *for any purpose* constitute a publication." § 303(b) (emphasis added). This court would be defying the express mandate of the statute if we were to decide on de novo review that phonorecord distribution constitutes publication. *Cf. Wright,* 111 F.3d at 418 (statutory language mandating that "no action shall be brought" under certain conditions governed only the initiation of new actions). Finally, the presumption against retroactive application of statutes is based, in part, on a hesitancy to reverse settled expectations. In enacting § 303(b), however, Congress has resolved a problem of unsettled expectations that had arisen from the circuit split. We conclude that § 303(b) should be applied in resolving the present appeal.

Under 17 U.S.C. § 303(b), Nix's distribution of phonorecords in 1949 or 1958 does not constitute publication of the underlying com-

position. The district court's grant of summary judgment to the Allsups, which was based on the opposite legal conclusion, must be reversed. In the lower court and on appeal, the Allsups raised alternative grounds for the invalidation of Mayhew's copyright. *See supra* note 2. These avenues have not been pursued by the district court. Therefore, we remand the case for further disposition.

### III

For the foregoing reasons, we **REVERSE** the order of the district court granting summary judgment to the Allsups and **REMAND** the case for further disposition consistent with this opinion.

WELLFORD, Circuit Judge, concurring.

I concur in the court's conclusion with respect to the applicability of 17 U.S.C. § 303(b) (enacted November 13, 1997) to the facts and circumstances of this case.

I would reach the same result, however, with reference to the law which should have been applied even without this recent amendment to the Copyright law. *See White–Smith Music Pub Co. v. Apollo Co.,* 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908); *Rosette v. Rainbo Record,* 354 F.Supp. 1183 (S.D.N.Y.1973), *aff'd,* 546 F.2d 461 (2d Cir. 1976), and the dissenting opinion in *La Cienega Music Co. v. ZZ Top,* 53 F.3d 950 (9th Cir.), *cert. denied,* 516 U.S. 927, 116 S.Ct. 331, 133 L.Ed.2d 231 (1995).[1] I believe that the unpublished decision, *Leeds Music Corp. v. Gusto Records, Inc.,* 601 F.2d 589, 1979 U.S.App. LEXIS 13834 (6th Cir.1979), is distinguishable and is not controlling here.

I concur in the **REVERSAL** of the judgment of the district court.

---

1. As pointed out in the majority opinion, *La*    *Cienega* is no longer good law, in any event.