NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0171n.06
Filed: March 2, 2009

No. 06-2586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| David A. Goward, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) |

Before:      KEITH, MERRITT, GIBBONS, Circuit Judges

**DAMON J. KEITH, Circuit Judge.**  This is an appeal from re-sentencing on remand.  A jury convicted David A. Goward ("Goward") of various counts arising from a drug conspiracy, including conspiracy to possess with intent to distribute marijuana, possession with an intent to distribute marijuana, distribution of marijuana, being a felon in possession of a firearm, and embezzlement of U.S. mail by a postal employee, pursuant to 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. §§ 922(g)(1) and 1709.  The jury acquitted Goward of a greater possession charge, and possession of a firearm in furtherance of a drug trafficking offense, pursuant to 18 U.S.C. § 924(c).  After determining the applicable advisory Sentencing Guidelines range was 121-151 months imprisonment, the district court sentenced Goward to 110 months imprisonment.  On appeal, Goward argues that the district court erred in: (1) imposing a two-level firearms enhancement pursuant to U.S.S.G. § 2D1.1(b)(1); (2) applying a two-level enhancement for obstruction of justice pursuant to § 3C1.1; and (3) calculating his criminal history category, resulting in an unreasonable

sentence. For the reasons set forth below, we **VACATE** Goward's sentence and **REMAND** for re-sentencing.

## I. BACKGROUND

### A. Factual

Goward's conviction and sentence arise from an investigation conducted by the Bay Area Narcotics Enforcement Team ("BAYANET"). In the summer of 2002, BAYANET Officers Taylor and Mainprize went to the residence of Dan Novak ("Novak") based on information they received about possible marijuana trafficking. After being questioned by the officers, Novak agreed to serve as an informant on the marijuana trafficking operation run by Armondo Contreras ("Contreras") and Goward.

Novak informed detectives that Contreras and Goward arranged for truck loads of marijuana to be shipped from Texas to Michigan. On at least two occasions, Novak allowed Contreras to deliver the truck loads of marijuana to Novak's place of employment in Saginaw, Michigan. According to Novak, Goward was present to help unload the marijuana on the second delivery. Novak subsequently helped BAYANET officers make controlled buys of marijuana from Goward and Contreras.

Following these controlled purchases, Novak told officers that Contreras and Goward were planning another delivery of a large truck load of marijuana from Texas to Novak's place of employment in Saginaw. BAYANET officers set up video surveillance, and on August 14, 2002, observed a truck arriving at Novak's workplace. The officers arrested Contreras and another co-

defendant as they were unloading bricks of marijuana. Goward, who was employed as a part-time mail carrier, was arrested while on his mail route later that day.

Soon after Goward's arrest, officers obtained a search warrant from the Saginaw County Prosecutor's office for Goward's residence in Burt, Michigan. On the same day, officers conducted a search of Goward's home and found thirteen pounds of marijuana, $60,000 in cash, firearms, and over 400 pieces of undelivered mail. Approximately two weeks later, on August 28, 2002, federal authorities issued a warrant for Goward's arrest.

**B. Procedural**

On September 25, 2002, a seven-count indictment was filed against Goward in the United States District Court for the Eastern District of Michigan. Goward was charged with (1) conspiracy to distribute 1000 kilograms or more of marijuana (21 U.S.C. § 846); (2) possession of 100 kilograms or more of marijuana with intent to distribute; (3) distribution of marijuana (21 U.S.C. § 841(a)(1)); (4) possession of marijuana with intent to distribute (21 U.S.C. § 841(a)(1)); (5) possession of a firearm during a drug trafficking crime (18 U.S.C. § 924(c)); (6) being a felon in possession of firearms (18 U.S.C. § 922(g)(1)); and (7) embezzlement of U.S. mail by a postal employee (18 U.S.C. § 1709).

In April 2004, a jury trial convicted Goward of (1) conspiracy to distribute 100 or more but less than 1000 kilograms of marijuana; (2) distribution of marijuana (on or about July 12, 2002); (3) possession of marijuana with intent to distribute (on or about August 14, 2002); (4) being a felon in possession of firearms; and (5) embezzlement of U.S. mail by a postal employee. Thus, the jury convicted Goward of a lesser included conspiracy offense than charged, and

acquitted him of a possession charge and the charge of possession of a firearm in furtherance of a

drug trafficking offense.

On December 15, 2004, at Goward's first sentencing, the district court agreed with the

jury's assessment of the credibility of the witnesses concerning the drug quantities and Goward's

involvement. But, while the jury acquitted Goward of possessing a firearm in connection with a

drug offense, the district court enhanced Goward's score under the Sentencing Guidelines,

pursuant to U.S.S.G. § 2D1.1(b)(1), with a 2-level increase for possession of a dangerous

weapon. The court noted, however, that "if bound by *Blakely*, [the court] likely would not

impose the enhancement in this case because of the fact that the jury's acquittal on the 924(c)

counted to negate by proof beyond a reasonable doubt the element of connection." (Sentencing

Tr. 27, Dec. 15, 2004.) In addition to the acquitted conduct enhancement, the court enhanced

Goward's guideline range for obstruction of justice (pursuant to U.S.S.G. § 3C1.1) – a crime for

which Goward was not charged.

Ultimately, the district court determined that Goward's base offense level was twenty-six,

that a two-level enhancement would be added pursuant to § 2D1.1(b)(1), and that another two-

level enhancement would be added pursuant to § 3C1.1, for a total offense level of thirty. The

district court further determined that Goward's criminal history category was III, and that the

applicable Sentencing Guidelines range for Goward was 121-151 months imprisonment. The

court sentenced Goward to serve 121 months imprisonment, and he filed a timely notice of

appeal.

On appeal to this Court, Goward argued that the district court erred when it denied his motion to suppress evidence and that his case should be remanded for re-sentencing because of the intervening Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). On July 13, 2006, this Court affirmed Goward's conviction, but vacated his sentence and remanded for re-sentencing consistent with *Booker*. *See United States v. Goward*, 188 F. App'x 355 (6th Cir. 2006).

On November 30, 2006, at Goward's re-sentencing, the district court acknowledged that the Sentencing Guidelines were now advisory, but determined it need not revisit Goward's original guideline computation. Thus, the court relied on its pre-*Blakely* and *Booker* computation. (Sentencing Tr. 4, 11-12, Nov. 30, 2006.) Goward objected to the two-level firearm enhancement, the two-level enhancement for obstruction of justice, and the categorization of his criminal history. His objections were overruled, and the court determined that the applicable Sentencing Guidelines range for Goward was unchanged. The district court, noting that parts of Goward's pre-sentencing report ("PSR") "might tend to overstate his criminal history," imposed a sentence of 110 months imprisonment. (Sentencing Tr. 29-30, Nov. 30, 2006.) Goward filed a timely notice of appeal.

## II. ANALYSIS

### A. Standards of Review

We review challenges to the constitutionality of the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its factual findings regarding enhancements for clear error. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006); *United*

*States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). Once the Court establishes that the district court properly calculated the Sentencing Guidelines, we review the sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 259-62 (2005).

Where an appellant fails to raise specific objections before the sentencing court, we review the sentence only for plain error. *United States v. Bailey*, 488 F.3d 363, 367-68 (6th Cir. 2007). For this Court to find plain error, the appellant must show (1) an error, (2) that is obvious or clear, (3) that affected defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Bostic*, 371 F.3d 865, 873, 876 (6th Cir. 2004).

### B. The Use of Acquitted Conduct

Goward argues that the district court's use of the preponderance of the evidence burden of proof standard to enhance his sentence range based on conduct the jury disavowed through its finding of "not guilty" is improper, and violates his constitutional right to a trial by jury. Pursuant to U.S.S.G. § 2D1.1(b)(1), a trial court should increase the offense score by two "if a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The application note to the Guidelines explains that "the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1(b)(1), comment n.3. At Goward's trial, the jury was presented with evidence that a search of Goward's home turned up "seven or eight" guns (some in cases), including an unloaded rifle found behind Goward's bedroom door, which was the

subject gun for the 18 U.S.C. § 924(c) offense. The jury was also presented with evidence that

Goward was an avid hunter, and that, in separate locations, drugs and cash were also found.

The jury found the evidence sufficient to convict Goward of being a felon in possession

of a firearm but rejected the government's argument that Goward used a firearm in connection

with drug trafficking. In addition, the record does not reflect any such testimony from trial

witnesses. Nevertheless, in revisiting the issue of Goward's possession of a firearm in

furtherance of a drug offense at sentencing, the district court determined the enhancement was

warranted because the court did not "believe that the defendant has offered any credible evidence

of a clear improbability of connection – or probability of non-connection [between the guns

Goward possessed and drug trafficking]." (Sentencing Tr. 28, Dec. 15, 2004 (referenced by the

court in Sentencing Tr. 11, Nov. 30, 2006).)

As it stands now, the law in this Circuit is that at sentencing, the court may disregard a

jury's verdict of acquittal in calculating the advisory Sentencing Guidelines range, and enhance a

defendant's offense level under the Guidelines based on conduct underlying offenses for which

the defendant was acquitted. *United States v. White*, — F.3d — , No. 05-6596, 2008 WL

5396246, at *3 (6th Cir. Dec. 24, 2008) (en banc) ("So long as the defendant receives a sentence

at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the

defendant's right to a jury trial by looking to other facts, including acquitted conduct, when

selecting a sentence within that statutory range."); *United States v. Mendez*, 498 F.3d 423, 427

(6th Cir. 2007) ("a post-*Booker* sentencing court may consider even 'acquitted conduct' if it finds

facts supporting that conduct by a preponderance of the evidence"). *But see White*, at *10

(Merritt, Martin, Daughtrey, Moore, Cole, and Clay, JJ., dissenting) ("the use of acquitted conduct at sentencing defies the Constitution, our common law heritage, the Sentencing Reform Act, and common sense").[1] Thus, bound by Circuit precedent, we must find that the trial court did not clearly err in enhancing Goward's sentence based on its determination that the unloaded rifle found behind Goward's bedroom door was connected to the drug offenses for which he was convicted.

## C. Obstruction of Justice

---

[1] Although other circuit courts that have addressed this issue have determined that the district court's consideration of acquitted conduct in sentences passes constitutional muster in light of the Supreme Court's 1997 decision in *United States v. Watts*, 519 U.S. 148 (1997), several federal judges have decried reliance on *Watts* as controlling in the outcome of challenges to the use of acquitted conduct under both the Fifth and Sixth Amendments. *White,* at *11 (Merritt, J., dissenting) ("The majority's simple and single-minded reliance on *Watts* as authority for enhancements based on acquitted conduct is obviously a mistake."); *see also United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring) ("reluctantly" concurring because of circuit precedent and "urg[ing]the Supreme Court to re-examine [the use of acquitted conduct to enhance a sentence] forthwith." Judge Bright further opined that "[p]ermitting a judge to impose a sentence that reflects conduct the jury expressly disavowed through a finding of 'not guilty' amounts to more than mere second-guessing the jury – it entirely trivializes its principal fact-finding function. . . . [and] deprives a defendant of adequate notice as to his or her possible sentence."); *United States v. Mercado*, 474 F.3d 654, 658 (9th Cir. 2007) (Fletcher, J., dissenting) ("Despite [the] clear limitation of *Watts'* holding, the majority here applies *Watts* to the Sixth Amendment issue before us, ignoring *Booker*'s requirement that the jury's verdict alone must authorize a defendant's sentence. This application defies logic."); *United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., concurring) ("only because [he is ] bound by Circuit precedent," concurring in the court's sentencing decision and noting that "the holding of *Watts*, explicitly disavowed by the Supreme Court as a matter of Sixth Amendment law, has no bearing on [sentence enhancements based on acquitted conduct] in light of the Court's more recent and relevant rulings in *Apprendi*, *Blakely*, and *Booker*."). *See generally United States v. Booker*, 543 U.S. 220, 240 (2005) (noting that the holding in *Watts* has no bearing on the issue of the use of acquitted conduct under the Sixth Amendment because there was "no contention [in *Watts*] that the sentence enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue . . . simply was not presented.")

Goward next argues that it was unconstitutional for the district court to enhance his

Sentencing Guidelines range for obstruction of justice, a crime for which he was not charged,

based on facts established by a preponderance of the evidence. The court enhanced Goward's

guideline range for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on letters Goward

sent to his mother and sisters after his August, 14, 2002 state arrest, but before his August 29,

2002 federal arrest.

The relevant Guidelines provision calls for a two-level enhancement if "the defendant

willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice

during the course of the investigation, prosecution or sentencing of the instant offense of

conviction." U.S.S.G. § 3C1.1. Goward contends the letters did not obstruct, and were not

meant to obstruct justice, as they were written before federal involvement, and were, at most, an

effort to try to defend civil forfeiture of his property. The government argues that "whether it

was a federal investigation at that point in time or a state investigation . . . is [ir]relevant to the

spirit of this particular section of the guidelines." At Goward's first sentencing,[2] the district court

rejected his argument and concluded that after Goward's state arrest, facts supporting the

enhancement were proved by a preponderance of the evidence. However, the court noted that if

it were applying *Blakely* it:

> would not apply this enhancement because of the exact provision in the
> footnote in the *Blakely* decision; that an enhancement of this nature was
> based on evidence that was clearly known to the government before trial
> and that could have been presented to the grand jury and included in the

---

[2] As noted above, at Goward's re-sentencing the court adopted by reference its original
guideline computation, after acknowledging that the Sentencing Guidelines were now advisory.

> indictment but wasn't. And the jury did not make a finding on this
> enhancement itself.

(Sentencing Tr. 28, Dec. 15, 2004 (referenced by the court in Sentencing Tr. 11, Nov. 30, 2006).)

Nevertheless, on remand the district court enhanced Goward's sentencing range for obstruction

of justice.

The law in this Circuit, as it now stands, does not preclude sentencing courts from finding

facts using the preponderance of the evidence standard. *See Mendez*, 498 F.3d at 426 (noting that

"this court has repeatedly held since *Booker* that sentencing courts may still find facts using the

preponderance-of-the-evidence standard"). Moreover, as discussed above, this Circuit holds that

such judicial fact-finding does not implicate the Sixth Amendment so long as the sentence meted

out is within the legislatively-mandated range. *White*, 2008 WL 5396246, at *3; *see also United*

*States v. Bustos*, 186 F. App'x 551, 553 (6th Cir. 2006) (affirming district court's two-point

enhancement under U.S.S.G. § 3C1.1 on judicial fact-finding).[3] Thus, bound by Circuit

precedent, we must find that the trial court did not clearly err in enhancing Goward's guideline

sentence range for obstruction of justice, a crime which the government chose not to put

before a jury.

### D. Reasonableness of Goward's Sentence

---

[3]Notably, the instant matter is distinguishable from *White* and *Mendez* on this issue because those cases dealt with "acquitted conduct," whereas here, Goward's sentence was enhanced based on conduct that was never presented to the jury even though it was "clearly known" and "could have been." The matter is also distinguishable from *Bustos* in that there, defendant was sentenced after entering a guilty plea. *Bustos*, 186 F. App'x at 553. Nevertheless, in light of this Circuit's clear holding permitting judicial fact-finding at sentencing under the preponderance of the evidence standard, we cannot find the district court committed clear error.

Goward challenges the procedural reasonableness of his sentence. Specifically, Goward contends the district court posed an unreasonable sentence on him because the court did not expressly respond to each of the criminal history guideline scoring arguments raised in his sentencing memorandum, or articulate why Goward's relationship with his son and his post-offense rehabilitation did not warrant a lower sentence. Additionally, Goward argues on appeal that the district court committed plain error in calculating his Sentencing Guidelines range by including convictions for operating while impaired (OWI) and conspiracy to possess counterfeit currency that took place outside of the relevant ten year period. The points added for the convictions moved Goward from criminal history category II to category III, resulting in a two-point increase.

At sentencing, a district court is tasked with imposing "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir. 2006). Where the district court applies advisory guidelines at sentencing, the defendant contests the manner in which the court applied the consulted guideline, and objections are properly reserved, we review the selection of a sentence for reasonableness. *Foreman*, 436 F.3d at 644; *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005). A sentence may be procedurally unreasonable if the district court failed to consider the applicable guidelines range, or neglects to consider the other factors listed in 18 U.S.C. § 3553(a). *United States v. Brika*, 487 F.3d 450, 462 (6th Cir. 2007).

Goward's sentencing transcript, including a detailed exchange with Goward regarding his criminal history, the court's goals of sentencing, the need for deterrence, the societal problems

caused by illegal drugs, the observation that the need to incapacitate Goward was "not a principal factor here," and agreement that Goward's criminal history score may have been "slightly overstated" before imposing Goward's sentence, reflects the court's consideration of the pertinent § 3553(a) factors. The court was not required to provide specific reasons for rejecting "any and all arguments by the parties for alternative sentences." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008). Nor was the court required to address Goward's post-sentencing rehabilitation. *United States v. Worley*, 453 F.3d 706, 709 (6th Cir. 2006). Thus, we find Goward's contention that the district court erred by not articulating why Goward's relationship with his son and his post-offense rehabilitation did not warrant a lower sentence is without merit.

Goward concedes that although he challenged his criminal history scoring in the PSR and in a sentencing memorandum filed for consideration at his re-sentencing, he did not "present the precise argument before the trial court that he raised on appeal concerning the timing of his felony conviction." Accordingly, the plain error standard is the applicable standard of review. *United States v. Gardiner*, 463 F.3d 445, 460 (6th Cir. 2006).

At trial, the government's informant, David Novak, testified that Goward had been involved with drug trafficking "since the early 1990s." However, at Goward's original sentencing hearing, the court noted that it was clear "that the jury did not accept the testimony of . . . Mr. Novak concerning the involvement of Mr. Goward," and that "like the jury, the court . . . will reject that testimony." In an exchange with the court at his re-sentencing hearing, where Goward generally objected that the criminal history categorization overstated his true criminal past, the court acknowledged that Goward's criminal history might have been overstated,

expressly pointing to "the impaired driving conviction when [Goward] was 21 years old."

However, the district court did not make a specific finding regarding when Goward began his

criminal enterprise, nor did the court state that it changed its feelings toward the weight to be

given to the trial testimony.

The offenses for which the jury convicted Goward occurred in 2002. Goward's PSR

added one point to his criminal history for a May 10, 1991 OWI conviction, and two points for a

March 13, 1990 conviction to possess counterfeit currency. Thus, both fell outside of the

relevant ten year period. U.S.S.G. § 4A1.2(e)(2) (prior sentences within ten years of

commencement of the instant offense are counted in calculation defendant's criminal history).

Based upon oral argument and a thorough review of Goward's sentencing and re-

sentencing hearing transcripts, we find that the district court committed plain error in adding

points to Goward's sentence for his OWI and counterfeit convictions, which clearly affected

Goward's substantial rights by increasing his criminal history category and subjecting him to a

higher sentencing range. The district court's failure to explain its factual determinations on

Goward's prior convictions requires us to remand the case for re-sentencing. Accordingly, we

vacate Goward's sentence and remand the case for re-sentencing.

### III. CONCLUSION

For the foregoing reasons, we **VACATE** Goward's sentence, and **REMAND** the case for

re-sentencing.

JULIA SMITH GIBBONS, Circuit Judge, concurring. I concur in the result and make two points. First, because I agree with the reasoning of *Mendez* and joined the majority opinion in *White*, I do not share the majority's reluctance in following our circuit precedent.

Second, while I agree that we must vacate Goward's sentence and remand for resentencing, I disagree with the majority's unequivocal statement that the 1991 OWI conviction and the 1990 possession of counterfeit currency conviction fell outside the relevant ten-year period and may not be used to calculate the criminal history score. This may indeed be the case, but it is not necessarily so. Count 1 of the amended superseding indictment alleged a conspiracy ending on December 31, 2002, and beginning at some unknown time. Because Goward did not argue in the district court that the convictions were outside the ten-year period, the district court did not make any factual findings about the beginning date of the conspiracy. For the same reason, the government found it unnecessary to point to any evidence at trial that might support a beginning date within ten years of the 1990 and 1991 convictions or to present any such evidence at sentencing. The remand should permit the district court to decide when the conspiracy began so that it can then determine whether its award of points for the earlier convictions was correct.