**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1181n.06

**No. 11-1195**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMEIL BAKRI,

      Defendant-Appellant.

                                /

**FILED**
*Nov 15, 2012*
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

BEFORE:    BOGGS and CLAY, Circuit Judges;  STAFFORD, District Judge[*]

**CLAY, Circuit Judge.**  Defendant Jameil Bakri appeals both his conviction for conspiracy to distribute and possession with intent to distribute cocaine on June 29, 2010, in violation of 21 U.S.C. § 846, and his sentence of 108 months imprisonment. He argues that there was insufficient evidence of guilt and that there was a fatal variance between the charge for which he was indicted and the proof offered at trial. He also argues that the district court erred in calculating his sentence.

For the reasons that follow, we **AFFIRM** Defendant's conviction, but **VACATE** his sentence and **REMAND** for re-sentencing.

---

[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

## BACKGROUND

Jameil Bakri dealt cocaine from "sometime in 2008 until September 2009." (Gov't Br. at 3.) He obtained the cocaine from Donald Hollin, who was the co-owner of a car dealership, and from Hollin's associate, Carlos "Scooby" Johnson. Hollin and Johnson would buy cocaine in Grand Rapids, Michigan, and re-sell it to dealers, including Defendant. (*Id.*) Johnson testified at Defendant's trial that he had seen Defendant purchase cocaine from Hollin on several occasions, including at least one transaction involving nine ounces. (R. 157, Johnson, Trial Tr. v. 1 at 90–91.)

Defendant sometimes sold cocaine to Sumer Brenner, who also sometimes bought cocaine for Matthew MacNaughton. Brenner and MacNaughton would each use some of the cocaine, and sell the rest to others. (R. 157, Brenner, Trial Tr. v. 1 at 144–48; R. 158, MacNaughton, Trial Tr. v.2 at 295–97.) In 2009, Defendant allegedly agreed to a scheme with Brenner and MacNaughton to acquire three kilograms of cocaine in Florida and bring it to Michigan. (R. 158, MacNaughton, Trial Tr. v.2 at 299-307.) Pursuant to their agreement, Defendant would help pay for Brenner and MacNaughton to go to Florida to meet with "Sergio," Brenner's contact there. (*Id.*) During the planning stages for the transaction, Defendant spoke with Sergio on the phone several times.

In May 2009, Brenner and MacNaughton flew to Florida and met with Sergio, who showed them a kilogram of cocaine. MacNaughton tested the cocaine by tasting it. Brenner then called Defendant to tell him that they could go ahead with the deal. Soon after this, MacNaughton advised Defendant by phone to call off the deal, because MacNaughton was worried that Sergio was an undercover law enforcement officer. (*Id.* at 306–12.) MacNaughton's fears were justified, as

Brenner soon learned from the father of her child that Sergio was a police officer. (R. 157, Brenner, Trial Tr. v. 1 at 172-74.) Defendant then sent MacNaughton money for return airfare to Michigan.

Once he was back in Michigan, MacNaughton continued to deal drugs, purchasing at least some of them from Defendant. (R. 158, MacNaughton, Trial Tr. v.2 at 312.) MacNaughton was eventually arrested by the Kent Area Narcotics Enforcement Team, (*id.* at 315–19,) and agreed to help the authorities. With MacNaughton's cooperation, officers recorded phone conversations between him and Defendant, and, while wearing a wire, MacNaughton conducted a drug deal with Defendant, who was arrested soon thereafter. (*Id.* at 219–24.) Officers searched Defendant's home, where they found ten grams of cocaine, $7,600 in cash, and three flat-screen televisions. In interviews with the officers, Defendant admitted that "his main source" of cocaine was Hollin, (R.158, Trial Tr. v. 2 at 368,) and that his monthly expenses were nearly $2300.00, despite having not had a legitimate income since 2007. (*Id.* at 375.)

Defendant was convicted by a jury on September 29, 2010. Prior to sentencing, a pre-sentence report ("PSR") was prepared and submitted to the district court. That report found that Defendant's guidelines range was 135–168 months, based on an offense level of 32 and a criminal history category of II. The criminal history category was calculated on the basis of what the government concedes was an erroneous inclusion of certain prior offenses. The offense level was calculated on the basis of Defendant's responsiblity for seven kilograms of cocaine; three from the Florida transaction, and four to six kilograms from various transactions with Donald Hollin. Defendant objected, arguing that he was only responsible for an amount between 500 grams and 2 kilograms of cocaine. The district court ruled that there was sufficient evidence of Defendant's

involvement in the Florida transaction, and that while there was probably sufficient evidence of his involvement in the Hollin transactions, it would exercise "caution" and only attribute the cocaine from the Florida transaction to Defendant. (Gov't Br. at 14.) Accordingly, the district court used a base offense level of 28 and a criminal history category of II, yielding an advisory sentencing range of 87–108 months. The court sentenced defendant to 108 months in prison, to be served concurrently with his state term of imprisonment.

## DISCUSSION

### I. Sufficiency of the Evidence at Trial

Because Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the basis of insufficient evidence both at the completion of the government's case and at the conclusion of the trial, we review the legal sufficiency of the evidence against defendant *de novo*. *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010). The reviewing court must draw "all available inferences and resolve all issues of credibility in favor of the [jury's] verdict." *United States v. Wade*, 318 F.3d 698, 701 (6th Cir. 2003) (internal quotation marks omitted). "Accordingly, defendants bear a heavy burden when asserting insufficiency of the evidence arguments." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (citing *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). Further, "[c]ircumstantial evidence alone, if substantial and competent, may sustain a conviction under this

deferential standard of review." *United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004) (internal quotation marks omitted).

There was sufficient evidence of Defendant's guilt for a jury to return its verdict, and we affirm the verdict. The elements of a conspiracy under 21 U.S.C. § 846 are: "(1) an agreement to violate the drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *Allen*, 619 F.3d at 522 (quoting *United States v. Welch*, 97 F.3d 142, 148–49 (6th Cir. 1996) (internal quotation marks omitted)). Further, the government does not have to prove either the commission of a substantive crime, *United States v. Rabinowich*, 238 U.S. 78, 87–89 (1915); *United States v. Mayes*, 512 F.2d 637, 652 (6th Cir. 1975); or that the conspiracy was successful. *Rabinowich*, 238 U.S. at 87–89.

The government presented significant evidence of Defendant's agreement to the conspiracy. He admitted to purchasing cocaine from Hollin and re-selling it on multiple occasions. *See United States v. Sills*, 662 F.3d 415 (6th Cir. 2011) ("[C]ase law from this circuit holds that a conspiracy can be inferred from repeated purchases of large quantities of drugs . . . .") Bakri was also aware of Hollin's and Johnson's involvement in the drug trade; by his own admission, Hollin offered him significant quantities of cocaine on more than one occasion. (*See, e.g.*, R. 159, Bakri, Trial Tr. v.3, at 486.) These facts indicate that Bakri had sufficient knowledge of the conspiracy such that a rational jury could have found him to be a part of that conspiracy. *See United States v. Hitow*, 889 F.2d 1573, 1577 (6th Cir. 1989) ("The key element of a chain conspiracy is knowledge of a large operation.") Viewed in the light most favorable to the prosecution, this would permit a reasonable jury to find that Bakri was a participant in a drug conspiracy.

In the context of criminal conspiracy, an agreement does not need to be formal or express. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). In fact, "[t]he evidence that the defendant agreed to join a conspiracy to violate the drug laws 'need only be slight.'" *Allen*, 619 F.3d at 522 (quoting *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991)). "Once the existence of the conspiracy is proven, only slight evidence is necessary to connect a defendant with the conspiracy." *Hitow*, 889 F.2d at 1577. While "a 'buyer-seller relationship' is not enough to make someone a participant in a drug conspiracy, 'further evidence indicating knowledge of and participation in the conspiracy can be enough to link a defendant to the conspiracy.'" *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)). In addition, "[d]rug distribution conspiracies are often 'chain' conspiracies such that agreement can be inferred from the interdependence of the enterprise." *United States v. Boujaily*, 781 F.2d 539, 544 (6th Cir. 1986); *accord United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

On the knowledge and participation elements, there was testimony from witnesses who had purchased cocaine from Defendant and witnesses who had sold cocaine to Defendant. *See United States v. Graham*, 622 F.3d 445, 450–51 (6th Cir. 2010) (testimony from repeat purchasers of drugs from a defendant is sufficient proof of a defendant's participation in a conspiracy). There was evidence that at one point, Hollin "fronted" cocaine to Bakri, (R.157, Johnson, Trial Tr. v.1, at 92,) which is considered strong evidence of a relationship that goes beyond the ordinary buyer-seller relationship. *Wettstain*, 618 F.3d at 585. Bakri also negotiated terms and fees with Brenner and MacNaughton with regard to the proposed transaction in Florida, including the fee that

MacNaughton would receive for driving the drugs back to Michigan. (Gov't Br. at 5). *See United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009). Finally, the government also produced evidence of Bakri's initial agreement and planning with Sergio Lopez, through the tapes of conversations between the two of them. It is clear that a rational jury could have found this to be sufficient evidence of Bakri's agreement, knowledge, and participation in a conspiracy to purchase cocaine. *See United States v. Gardner*, 488 F.3d 700, 707–08 (6th Cir. 2007).

Accordingly, we find that there was sufficient evidence for a rational jury to find that Bakri conspired to violate the drug laws, and we affirm his conviction.

## II.    Fatal Variance

Because Defendant raises the issue of prejudicial variance for the first time on appeal, our review is limited to plain error. *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006). Defendant must therefore show a clear and obvious error that affected his substantial rights. Finally, if Defendant can make such a showing, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 1429 (2009) (internal quotation marks omitted; alteration in original); *accord United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

"A variance occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Hughes*, 505 F.3d 578, 587 (6th Cir. 2007) (internal quotation marks omitted; alteration in original). "[I]f an indictment alleges one conspiracy, but the evidence can reasonably be construed

only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." *Id.* (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982) (internal quotation marks omitted; alteration in original)). "Within the context of a conspiracy, a variance constitutes reversible error only if a defendant demonstrates that he was prejudiced by the variance and that the indictment allege[d] one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies." *Caver*, 470 F.3d at 235–36 (internal quotation marks and citations omitted) (emphasis added).

Defendant can show neither variance nor prejudice. The indictment alleges that he was involved in a conspiracy with Hollin and Johnson. (R. 98, Third Superceding Indictment.) Defendant claims that the evidence at trial demonstrated a "very different and unrelated conspiracy," (Def. Br. at 32,) involving the transaction in Florida. First, construing "the evidence . . . in the light most favorable to the government," *Caver*, 470 F.3d at 236, the evidence would permit the inference that the Florida transaction was part of the conspiracy with Hollin and Johnson. *See id.* If Defendant were part of a chain conspiracy with Hollin and Johnson on one side, and Brenner and MacNaughton on the other, then acts committed by Defendant with Brenner and MacNaughton are attributable to the conspiracy between Defendant, Hollin, and Johnson. *See id.* But even if Defendant could show that it was clear error to find that the Florida transaction was connected to the Michigan conspiracy, there was still ample evidence, including the testimony of two co-conspirators, of a conspiracy involving Hollin, Johnson, and Defendant to violate the drug laws, which was precisely what was alleged in the charging document.

In any event, the question of variance is academic, because Defendant cannot show prejudice as a result of any variance. *See, e.g., United States v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) ("Finding a variance does not mandate a reversal; in order for the variance to constitute reversible error, a defendant must at the very least show that this variance prejudiced him.") (citing *Caver*, 470 F.3d at 237). Prejudice exists "where the defendant is unable to present his case and is taken by surprise by the evidence offered at trial"; "where the defendant is convicted for substantive offenses committed by another"; or "where spillover [occurs] because of a large number of improperly joined defendants." *Swafford*, 512 F.3d at 842–43 (internal quotation marks omitted; alteration in original).

None of these conditions have been met here. Defendant was able to present his case. In fact, against the advice of counsel, he testified on his own behalf. Further, the allegations concerning Brenner and MacNaughton were included in pre-trial filings, and the nature of the conspiracies were substantially similar, so there was no danger of Bakri being surprised by the evidence presented against him. *See, e.g., United States v. Davis*, 407 F. App'x 32, 40–41 (6th Cir. 2011). Nor was there any possibility of Defendant being convicted for the substantive acts of another. Regardless of how one describes the conspiracy or conspiracies, Defendant was an active participant. Finally, there was minimal chance of spill-over. There were four co-defendants, two of whom testified against Bakri, and Bakri's trial was ultimately severed from the other defendants. (*See* R. 85.) Accordingly, the risk of transference of guilt from one defendant to another was minimal. *See Caver*, 470 F.3d at 237.

## III.    Errors in Sentencing

Finally, Defendant raises an unpreserved claim that the district court calculated his criminal history category incorrectly and a preserved claim that the district court incorrectly calculated the quantity of cocaine involved in the offense. Sentences are reviewed for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court's conclusions of law are reviewed *de novo*, while its findings of fact are reviewed for clear error. *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008). Unpreserved procedural objections are reviewed for plain error. *Vonner*, 516 F.3d at 386. Accordingly, we review Defendant's claim regarding the criminal history category for plain error and his claim regarding quantity of cocaine for clear error. *United States v. Warman*, 578 F.3d 320, 350 (6th Cir. 2009).

Defendant claims that the district court erred in calculating the quantity of cocaine that should be attributed to him. The court found that three kilograms of cocaine could be attributed to Defendant. Defendant argues that this was inappropriate, because the three kilograms figure could only refer to the unconsummated Florida transaction and that, in any event, the district court did not set forth any specific evidence as to how it reached its conclusion. However, Defendant does not present any legal argument as to why the district court's determination was clear error. Evidence introduced connected Defendant with quantities greater than three kilograms of cocaine. For example, Detective Merryweather testified that Defendant had reported seeing Hollin, a co-conspirator, with four to five kilos of cocaine, (R. 158, Merryweather, Trial Tr. v.2 at 370,) and Johnson testified that he and Hollin had gone to Grand Rapids at least three times, retrieving a kilo

10

of cocaine each time, for sale to parties including Defendant (R. 157, Johnson, Trial Tr. v.1 at 85–88.) Accordingly, there was sufficient evidence for the court to conclude that Defendant was responsible for at least three kilograms of cocaine.

Defendant also claims that the trial court erred in calculating his criminal history category. He was sentenced as having a criminal history category of II, based on three prior sentences entered in Michigan state courts. Two of those sentences were imposed more than ten years ago, and thus should not have been counted pursuant to U.S.S.G. §§ 4A1.2(e)(2) and (3). The government concedes that the district court calculated the criminal history category incorrectly, (Gov't Br. at 32,) and further acknowledges that this miscalculation constitutes plain error. *See, e.g., United States v. Goward*, 315 F. App'x 544, 551–52 (6th Cir. 2009). Accordingly, remanding the case to the district court for re-sentencing is appropriate.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's convictions but **VACATE** his sentence and **REMAND** for re-sentencing.