*413 KEITH, Circuit Judge,
dissenting.
I respectfully dissent. The majority opinion is flawed in several respects, and I will highlight the most problematic areas here.
A. Reaching the Unpreserved Issue— Misconstrued Record & Case Law
As a preliminary matter, the majority misconstrues the record and the case law in their pursuit to reach the unpreserved issue with respect to James and Jackie. The majority’s assertion that the “issue has been briefed by both sides and discussed at oral argument” is misleading. Neither Jackie’s counsel nor James’s counsel even attended oral argument, and neither raised the issue of a constructive amendment or fatal variance in their briefs. Therefore, the Government never had an opportunity to respond to any argument that a fatal variance occurred as to James’s or Jackie’s involvement in the offense. While asserting that the inquiry is “fact-intensive,” the majority simultaneously applies a cookie-cutter approach to all three defendants, when in fact the circumstances for each defendant were different. For example, it is undisputed that Jackie was never a member of the Bussell conspiracy.
The majority relies on the case of Mayhew v. Allsup, 166 F.3d 821, 823-24 (6th Cir.1999), to justify addressing an issue that neither James nor Jackie raised. The majority asserts that Mayhew stands for the proposition that a court can “consider the application of a statute helpful to the defendant despite his failure to address it either at trial or on appeal when the failure to do so would constitute a miscarriage of justice.” A close reading of Mayhew reveals that the majority misconstrued this case in much the same way it misconstrued the record. In Mayhew, the plaintiff, who was the appellant, failed to raise an argument before the trial court regarding a statute that was not enacted until after the trial court issued its judgment. See id. at 823. But the appellant did raise the issue before this court in its appellate brief. See id. The defendant, a corporate entity, was the appellee in that civil case. See id. It failed to directly respond to the issue raised by the appellant, instead arguing that the issue was not preserved. See id. This court determined that the issue could still be addressed in order to avoid a miscarriage of justice. See id. at 823-24. Mayhew is inapposite for many reasons, but mainly because the appellant in May-hew, raised the issue on appeal, unlike Jackie or James here. See id.[1] The majority misconstrues the record and May-hew in an attempt to excuse its conduct of acting as defense counsel rather than impartial judges.[2] Fundamentally, I believe we should refrain from overstepping our bounds under the guise of “justice.”
Additionally, the majority purports to apply a different standard of review to the fatal variance claim it constructed for James, noting that “plain error” review was required. However, the majority, in perfunctory fashion, devotes one sentence to the “plain error” inquiry that amounts to nothing more than a bare recitation of *414 the “plain error” elements without any analysis or citation to legal authority.
Because neither James nor Jackie raised the issue on appeal, the remainder of my dissent will address the fatal variance claim as raised by Kelvin Mize.
B. No Guilt Transference Occurred by Definition of the Term
I agree that a variance occurred with respect to Kelvin because multiple conspiracies were discussed at trial. However, as the majority points out, not every variance is a fatal one (i.e., not every variance requires reversal). See United States v. Budd, 496 F.3d 517, 522 (6th Cir.2007) (noting that a variance is not prejudicial per se, and thus, a variance will not always require reversal). A liberal reading of the majority opinion suggests that the majority believes guilt transference occurred with respect to Kelvin, rendering the variance fatal. I respectfully disagree. By definition, guilt transference occurs where there is a risk that the defendant was convicted “based on evidence of a conspiracy in which the [defendant] did not participate.” United States v. Hughes, 505 F.3d 578, 587 (6th Cir.2007) (emphasis added). In other words, it occurs where guilt is transferred from one defendant to another defendant. See id; see also United States v. Caver, 470 F.3d 220, 237 (6th Cir.2006) (“The primary risk is the transference of guilt from defendants involved in one conspiracy to defendants in another conspiracy.”) (emphasis added). In essence, when guilt transference occurs, a defendant is convicted of the “substantive acts of another” person. United States v. Bakri, 505 Fed.Appx. 462, 468-69 (6th Cir.2012).
Accordingly, there is no guilt transference where the defendant was a participant in all of the conspiracies presented at trial. See, e.g., Hughes, 505 F.3d at 587 (6th Cir.2007) (noting that to demonstrate a prejudicial variance, “[a] reviewing court looks to whether there is a danger that the appellant was convicted based on evidence of a conspiracy in which the appellant did not participate (guilt transference)”) (emphasis added); United States v. Blackwell, 459 F.3d 739, 762 (6th Cir.2006) (same); see also United States v. Martin, 516 Fed.Appx. 433, 443-44 (6th Cir.2013) cert. denied sub nom. Brooks v. United States, — U.S. -, 134 S.Ct. 301, 187 L.Ed.2d 215 (2013) (holding that no prejudicial variance occurred because even “assuming the existence of two separate conspiracies, the evidence overwhelmingly implicated [the defendant] in both”); Bakri, 505 Fed.Appx. at 468-69 (“Nor was there any possibility of [defendant being convicted for the substantive acts of another. Regardless of how one describes the conspiracy or the conspiracies, [defendant was an active participant.”); United States v. Goff, 400 Fed.Appx. 1, 13 (6th Cir.2010) (holding that even though a variance occurred where evidence of two separate conspiracies was introduced, the variance did not warrant reversal because the defendant “was an integral participant in these other conspiracies”); United States v. Hettinger, 242 Fed.Appx. 287, 294 (6th Cir.2007) (holding that even assuming that multiple conspiracies existed, the defendant “was a member of each conspiracy and accordingly could not establish any ‘danger ... that [he] was convicted based on evidence of a conspiracy in which [he] did not participate’ ”); United States v. Mitchum, 208 F.3d 216, 2000 WL 222578, *3 (6th Cir.2000) (unpublished table decision) (holding that no fatal variance occurred because “no matter which conspiracy the jury believed existed, [the defendant] was involved in each”). Here, “[r]egardless of how one describes the conspiracy or the conspiracies, [Kelvin] was an active participant” in both of them. See Bakri, 505 Fed.Appx. *415 at 468-69. Therefore, guilt transference did not occur. See id.
Even though a fatal variance did not occur, surely the government cannot introduce mounds of “extraneous and highly prejudicial” evidence, a term used by the majority, without some recourse for the defendant. Intuitively, one would think that something is amiss with the presentation of the evidence at trial. There is. Where the evidence does not rise to the level of a fatal variance, the recourse is an objection pursuant to the Federal Rules of Evidence. These rules govern the admissibility of prejudicial evidence. Fed. R.Evid. 403 (noting that in order for evidence to be excluded under this rule, the probative value of the evidence must be “substantially ” outweighed by the danger of “unfair prejudice”) (emphasis added). And the rules also govern the admission of evidence of other crimes or wrongs. Fed. R.Evid. 404(b). As an initial matter, it is not entirely clear what “highly” prejudicial means as the majority uses the term here. The majority does not define or quantify this term. If the majority is of the opinion that “highly” prejudicial actually means that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, then the majority’s analysis demonstrates that the majority is actually applying a Rule 403 analysis to a fatal variance case.
The majority wrongly assumes that because “prejudice” to a defendant’s substantial rights is a component of the fatal variance analysis, see Caver, 470 F.3d at 235-36, the introduction of “highly prejudicial” evidence must be sufficient for a fatal variance. But the majority attempts to fit a square peg into a round hole. In every case where there is a variance, by definition, there was evidence of a separate uncharged conspiracy, United States v. Warman, 578 F.3d 320, 341 (6th Cir.2009), which is undoubtedly prejudicial to some extent.
In essence, the majority attempts to fit an argument that sounds plainly in the admissibility of evidence (which is subject to abuse of discretion review)[3] into a fatal variance analysis (subject to de novo review).[4] As the majority opinion’s loose language shows, the pieces do not fit. Cf. United States v. English, 785 F.3d 1052, 1059 (6th Cir.2015) (Clay, J., concurring) (concluding that the trial court’s allowance of evidence that the defendant had been involved in two prior Medicare fraud schemes during a trial for Medicare fraud was error under 404(b), but nonetheless harmless error, even where the defendant raised the issue of a fatal variance).
C. The Majority’s Impracticable Approach to the Volume of the Evidence Test
The majority opinion suggests that the “volume” of the evidence of the Bussell conspiracy makes this case unique and that the case “comes down to ... balance.” While balance is important, the majority again misses the mark in its analysis.
In United States v. Blackwell, 459 F.3d 739, 762 (6th Cir.2006), this court noted that where the sheer volume of evidence of a separate conspiracy is concerning, we can examine the following three factors to determine whether a variance was prejudicial: (1) the number of conspiracies the evidence establishes, (2) the number of non-conspiratorial co-defendants tried with defendant, and (3) the size of the conspiracy alleged in the indictment. Id. at 762. Indeed, in United States v. Hughes, 505 *416 F.3d 578, 590-91 (6th Cir.2007), we held (after applying these factors) that a variance was not prejudicial where there were three separate conspiracies and six code-fendants. In United States v. Osborne, 545 F.3d 440, 444 (6th Cir.2008), we held that even assuming a variance occurred, it did not require reversal where there were two conspiracies and only three defendants. In the present case, we similarly have two conspiracies and three defendants.
The majority seems to suggest that we need to abandon the three-factor test articulated in Blackwell, and instead employ a “this-feels-like-too-much-evidence” approach. This approach is problematic for at least two reasons. First, it advances a test that is non-quantifiable; in other words, it will be impossible for trial judges to know whether 50% or 60% or 70% of the evidence admitted is too much evidence of the uncharged conspiracy. Second, it is impracticable in reality. Trial judges would presumably be forced to keep tally marks of every piece of evidence of the uncharged conspiracy during the trial, and then presumably declare a mistrial midway through when the evidence crosses this arbitrary threshold of “too much” — even without defense counsel having raised the issue.” I believe the problems associated with this approach are the very reasons this court usually employs a very quantifiable inquiry, such as the one articulated in Blackwell — the one the majority surreptitiously abandons here.
D. Juror Confusion
The majority also asserts that reversal is warranted because the jury was “distracted” by the evidence of the Bussell conspiracy. Perhaps the majority meant to rely on juror “confusion,” which is applicable to the analysis for determining whether a variance was prejudicial. See United States v. Osborne, 545 F.3d 440, 444 (6th Cir.2008) (holding that even assuming a variance occurred, the evidence related to a second conspiracy was “clearly demarcated and not likely to confuse the jury.”). At oral argument, Kelvin’s counsel conceded that distinctions were drawn between the Bussell conspiracy and the Mize conspiracy at trial. This made it even less likely that the jury was confused. See id. Also, as we concluded in Caver, a trial of short duration also makes it less likely that the jury was confused. United States v. Caver, 470 F.3d 220, 237 (6th Cir.2006) (concluding that even assuming that the evidence at trial demonstrated only multiple conspiracies, there was no prejudice requiring reversal because, inter alia, the trial only lasted a week). In the present case, the trial only lasted four days, further minimizing any juror confusion.
E. Conclusion
In sum, the majority commits many errors: it confuses the admission of prejudicial evidence with the occurrence of a fatal variance; it ignores the definition of guilt transference (tellingly, the majority quoted the definition but never applied it to either of the defendants); it proposes a “this-feels-like-too-much” evidence test that is flawed in theory and impracticable in reality; and it robs the government of any meaningful opportunity to respond to the issues with respect to Jackie and James. In committing these errors, the majority reaches the wrong conclusion.
At first blush, it may appear that the majority reaches a “noble” outcome because the convictions of three defendants are reversed. However, courts should be ever mindful that true justice requires consistent application of the law for everyone. Undoubtedly, the “this-feels-like-too-much” evidence approach espoused by the *417 majority will not be applied consistently in trial courts or even on appeal. Creating these arbitrary tests both invites and justifies discrimination among defendants, because what “feels like too much evidence” for one person will not “feel like too much evidence” for another. The majority opinion will perpetuate confusion and disorder in the courts, and thus undermine the public’s confidence in the judiciary. As a court of appellate review, we strive to provide guidance that the district courts can consistently follow in a fair and meaningful way. But with today’s opinion, the majority has abdicated that resppnsibility altogether.

. Additionally, the majority asserts that the issue in Mayhew was “helpful to the defendant[,]” the appellee. However, that statement is also incorrect. Mayhew never characterized the issue as being helpful to any party, much less the appellee. See id. In any event, the issue did not help the defendant-appellee because the court reversed the district court's order granting summary judgment to the defendant-appellee. See id. at 824.

. Notably, both defendants were represented by counsel.

. Pedigo, M.D. v. UNUM Life Ins. Co. of Am., 145 F.3d 804, 807 (6th Cir.1998).

. United States v. Caver, 470 F.3d 220, 235 (6th Cir.2006).